Jean Greenfield v. Commissioner.
Greenfield v. Commissioner
Docket No. 815-69SC.
United States Tax Court
T.C. Memo 1969-242; 1969 Tax Ct. Memo LEXIS 54; 28 T.C.M. (CCH) 1264; T.C.M. (RIA) 69242; November 13, 1969, Filed Jean Greenfield, pro se, 2080 Ocean Ave., Brooklyn, N. Y. Larry Kars, for the respondent. FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: Respondent has determined a deficiency in petitioner's 1965 income tax in the amount of $136.10. The sole issue is whether petitioner is entitled to a dependency exemption for the year in issue for her claimed support of her brother, Nathan Tropp, under *55 section 151(a) and (e) and section 152(a)(3) of the Code. [1] Entirely dependent upon this issue is the subsidiary issue of whether petitioner is entitled to use the "Heads of Households" rates for the year in issue under section 1(b)(1)(B)(2)(A)(ii), which provides in pertinent part: Definition of Head of Household. - * * * an individual shall be considered a head of a household if, and only if, * * * [he] (A) maintains as his home a household which constitutes for such taxable year the principal place of abode, as a member of such household, of - * * * (ii) any other person [a brother] who is a dependent of the taxpayer, if the taxpayer is entitled to a deduction for the taxable year for such person under section 151, * * * Jean Greenfield is an individual who resided in Brooklyn, New York, at the time her petition herein was filed. Her individual income tax return for 1965 was filed with the district director of internal revenue, Brooklyn, New York. 1265 Petitioner's brother, referred to hereafter as Nathan, was a resident-patient of the Kings Park State Hospital (a state hospital) in Kings Park, *56 New York, during the entire year in issue. The record does not show the distance between petitioner's home and the hospital but it was about a two and one-half hour trip by taxi, Long Island Railroad, and the BMT, and petitioner made this trip about thirty-five times during the year in issue to visit her brother and do all she could to check upon and improve his conditions of living and his medical care. Unfortunately, petitioner neither maintained any records nor kept any receipted bills to show amounts of money spent by her on her brother's behalf, however, we are convinced that she was extremely devoted and helpful to him and we believe her testimony that each of her trips to the state hospital "cost [her]" an average of $30, excluding clothes which she bought for her brother and other expenditures detailed below. Petitioner's testimony was at times disjointed and confused, but giving her the benefit of all doubts we find that she made the following expenditures for her brother's benefit during the year in issue: 35 visits to the state hospital
$1,050
Clothes
500
Barber shop
80
Chiropodist
35
6 uses of a limousine to carry large packages
48
Burial insurance premiums
$ 18
Long-distance calls to hospital
9
Various tips 100
Total
$1,840
*57 Section 152(a)(3) defines "dependent" as including, inter alia, a brother, "over half of whose support for the calendar year * * * was received from the taxpayer." We called this requirement to petitioner's attention repeatedly during the trial and cautioned her that to prove her entitlement to the claimed dependency exemption she had to prove not only what she had spent for, and on behalf of, her brother but also how much his total support had cost during the year in issue. Petitioner has made no payments to the State of New York and there is no evidence of record as to the cost of his support at the state hospital. We advised petitioner that the subpoena power of the court was available to her to require the attendance and testimony of officials able to testify regarding such cost, but she replied that she "wouldn't take a doctor off his job that's so terribly essential. On this state of the record we have no choice but to hold that petitioner has failed her burden of proof in that there is no evidence of record from which the total cost of her brother's support can be determined. [2]
*58 Decision will be entered for the respondent. Footnotes
1. All references are to the Internal Revenue Code of 1954.↩
2. At one point in her testimony petitioner estimated that the State of New York spent about $200 a month on her brother's support. This of course would exceed the amount spent by petitioner during the year in issue.↩